# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| TARIK JAAFAR, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **LOUDOUN COUNTY, VIRGINIA** ) | JURY TRIAL DEMANDED |
| ) | |
| and ) | |
| ) | |
| **DAVID WOZNIAK,** ) | |
| Individually, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

NOW COMES, your Plaintiff Tarik Jaafar ("Jaafar") by counsel, for his Complaint against Defendants Loudon County and Captain David Wozniak, states and alleges as follows:

### INTRODUCTION

1. This matter arises from Defendants' unlawful use of a restraint chair on Jaafar while he was a pretrial detainee in violation of his Fourteenth Amendment rights.

### PARTIES

2. Plaintiff, Dr. Tarik Jaafar, is a natural person and a citizen of Virginia, residing in Ashburn, Virginia.

3. Defendant Loudoun County owns and operates Loudoun County Adult Detention Center ("LCADC"), a correctional facility located in Loudoun County, Virginia.

4. Defendant David Wozniak, is a natural person and a citizen of Virginia, residing in Leesburg, Virginia.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as multiple claims arise under 42 U.S.C. § 1983, a law of the United States.

6. Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1391, because all of the events giving rise to Plaintiff's claims occurred in the County of Loudoun, Virginia.

**FACTUAL BACKGROUND**

7. Jaafar arrived at LCADC on March 1, 2022 as a pretrial detainee awaiting charges of Assault-Simple Assault Against a Family Member and Violation of Protection Orders.

8. Almost immediately upon his detainment, Jaafar began experiencing extreme agitation and panic. Jaafar suffered from and had previously been diagnosed with Schizophrenia, PTSD and generalized anxiety disorder. Upon his arrival at LCADC, Jaafar immediately informed staff of his mental illness.

9. On March 1, 2022, Sgt. Nelson placed Jaafar in an isolated cell deeply triggering Jaafar's mental agitation. Jaafar began banging his head on the wall and throwing himself onto the floor. Sgt. Nelson placed Jaafar into a total restraint chair

securing him with straps at his waist, shoulders, wrists, and feet. While restrained Jaafar called out in fear and panic for help.

10. After two hours, Jaafar was momentarily released from the restraint chair. Unsurprisingly, the restraint chair had not improved Jaafar's state of mind, and he began to engage in similar self-destructive behavior. He was confined in the restraint chair again.

11. Restraint chairs have become notorious for their dangerousness and have commonly become referred to as the "Devil's Chair" or "Torture Chair." *See* Radley Balko, *Death in the Devil's Chair: Florida Man's Pepper Spray Death Raises Questions About Jail Abuse*, The Huffington Post, Jan. 11, 2012. Individuals in restraint chairs are at risk of injury and death. Common causes of death and injury from restraint chairs include: strangulation, asphyxiation, cardiac arrest, broken bones, trauma and concomitant exacerbation of already existing psychiatric conditions, among other causes. William P. Angrick, II, *Investigation of Restraint Device Use in Iowa's County Jails* (Feb. 2009); Amnesty International, *United States of America: The restraint chair. How many more deaths?* (Feb. 2002).

12. In emergency situations, the expert consensus amongst psychiatrists is for the use of leather or soft restraints of restraint chairs. Michael Allen, et al., *The Expert Consensus Guideline Series: Treatment of Behavioral Emergencies*, A Postgraduate Medicine Special Report (May 2001).

13. On March 2, 2022, LCSW Amanda Gushard-Edwards screened Jaafar for a temporary detention order ("TDO"). Gushard-Edwards observed Jaafar in the restraint chair in the early morning of March 2. She stated he sat in the chair with both

hands and chest restrained. Jaafar pulled at his restraints, he was unable to fully participate in his assessment due to his disorganization and anger. It appeared that he had not eaten or slept since his detainment at LCADC. Gushard-Edwards concluded that Jaafar was unable to be managed at LCADC and recommended a TDO.

14. Later that day, Jaafar transferred to Northern Virginia Mental Health Institute ("NVMHI"), which held him safely and securely – without the use of a restraint chair – until March 15, 2022, when he was sent back to LCADC.

15. On March 15, 2022, shortly after Jaafar's return to LCADC, Sgt. Duhl requested another TDO evaluation for Jaafar, reporting that upon his return Jaafar panicked and yelled he would kill himself and began banging his head against the wall. At approximately 2:10 p.m. or shortly thereafter, Sgt. Duhl strapped Jaafar's hands and chest into a restraint chair and left him alone in his cell. Sgt. Duhl reported that he spoke to Jaafar through the door during checks, but that Jaafar was not released from his restraint chair for a break, or to eat or use the bathroom prior to his evaluation.

16. At approximately 11 p.m. or later, LCSW Denise Turner-Miller evaluated Jaafar, who had been held continuously in the restraint chair for approximately 9 hours without a break. Turner-Miller stated Jaafar pulled at his restraints and thrashed his head from side to side stating he had Schizophrenia and wanted to die. Turner-Miller observed Jaafar as disorganized, paranoid and unable to engage in his assessment, and authorized a second TDO.

17. Jaafar returned to NVMHI on March 16, 2022, where he remained until March 21, 2022.

18. Upon learning of his transfer back to LCADC on March 21, 2022, Jaafar immediately began banging his head on the wall. At approximately 1:10 p.m. Jaafar was placed into a restraint chair for transport back to LCADC. Upon his arrival at LCADC, Jaafar was kept in a restraint chair continuously until 9:00 p.m. when he was temporarily released, then immediately placed back into the restraint chair after he began banging his head against the wall.

19. LCADC kept Jaafar in a restraint chair continuously until his transfer back to NVMHI on a third TDO on March 22, 2022, at 3:05 p.m.

20. Jaafar was held at NVMHI – without the use of a restraint chair – until April 8, 2022, when he was transferred back to LCADC at approximately 6:33 a.m. Jaafar was placed immediately into the restraint chair upon his return to LCADC. He was released from the chair twice. Upon each release, Jaafar began engaging in self-harm. Jaafar was placed on his fourth TDO and sent back to NVMHI later that day.

21. On April 18, 2022, upon transfer from NVMHI back to LCADC Jaafar was immediately placed into a restraint chair, and secured almost the entirety of his time. He was transferred back to NVMHI on a fifth TDO later that day.

22. On April 21, 2022, upon transfer from NVMHI back to LCADC Jaafar was immediately placed into a restraint chair after again engaging in self-harm. LCADC staff stated they were unable to manage Jaafar's self-harm behavior. LCSW Pilar Leiva-Diban opined that "[b]eing in jail appears to be Tarik's most significant stressor at this time as he is able to maintain safety at a hospital but unable to be safe upon his return to jail."

23. Jaafar was transferred back to NVMHI on April 21, 2022. However, he was forced to return to LCADC the very next morning. Jaafar was observed peeing all over himself while being escorted into the booking area of LCADC. Jaafar begged for the LCADC staff to "stop torturing" him as they forced him into the restraint chair once again. Jaafar was transferred back to NVMHI where he remained – without the use of a restraint chair – until April 25, 2022.

24. On April 25, 2022, Jaafar was forced to return to LCADC after his hearing was not certified and dismissed. Jaafar was immediately placed into a restraint chair for the "number of hours allowed by policy" which was 8 hours. As soon as he was taken out, Jaafar hit is head so hard against the wall he drew blood and created a large knot on his forehead. During his preadmission screening Jaafar was once again found to be unable to be safely monitored or served at LCADC and received another TDO.

25. Jaafar remained at NVMHI until April 28, 2022, where he was transferred back to LCADC for good after a hearing that denied permanent transfer to NVMHI while he awaited criminal proceedings.

26. Jaafar remained at LCADC from April 28, 2022 until his release on June 2, 2022. During the entirety of Jaafar's 35 days between April 28, 2022 through June 2, 2022, Jaafar was strapped by his hands and chest in the restraint chair for essentially 24-hour periods. Although Jaafar was released once a day for a bathroom break, he urinated and defecated on himself numerous times while strapped into the restraint chair. LCADC staff forced Jaafar to remain strapped in with his soiled clothes for hours at a time.

27. During the 35 days in the restraint chair LCADC staff taunted Jaafar, called him names, and antagonized him.

28. Jaafar began experiencing seizures while forcibly restrained in the chair essentially 24 hours a day. LCADC did nothing for the seizures accusing Jaafar of making up the symptoms. Jaafar was left to writhe in pain and suffer through the seizures at great risk of further injury without help or medication to mitigate the symptoms.

29. LCADC forcibly restrained Jaafar in the restraint chair for 35 straight days without any consideration for alternative options. The 35 days enacted a tremendous physical toll on Jaafar's body, including permanently exacerbating Jaafar's hernia, asthma and mental illness.

30. All criminal charges against Jaafar were dismissed prior to trial.

## COUNT I
## Excessive Force Against a Pretrial Detainee (42 U.S.C. § 1983)

31. At all material times, Loudoun County and Captain David Wozniak acted under the color of state of law.

32. At the time of his confinement in LCADC, Jaafar had not been convicted of a crime and therefore was a pretrial detainee.

33. As a pretrial detainee, Jaafar may not be subject to punishment under the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment prohibits the use of excessive force against a pretrial detainee.

34. As the commander of the LCADC facility, Captain David Wozniak set policy for Loudoun County.

35. Under Wozniak's instruction, defendants inflicted unnecessary and wanton pain and suffering upon Jaafar by continually confining him to a restraint chair for 8-hour periods between March 2, 2022 through April 25, 2022 during those days of his confinement at LCADC.

36. Eight-hour periods of confinement in a restraint chair are excessive in relation to other options available to LCADC, for a detainee in clear desperate need of psychiatric treatment.

37. The use of a restraint chair is excessive in relation to other options available including leather or soft restraints.

38. The use of a restraint chair is excessive in relation to other options available including NVMHI.

39. Defendants' use of the restraint chair on Jaafar between March 2, 2022 through April 25, 2022 constitutes cruel and unusual punishment and excessive force.

40. Due to Defendants' excessive force, Jaafar asserts damages for severe emotional and mental distress, pain and suffering, nightmares, humiliation, loss of enjoyment of life, mortification, great personal trauma, stress, fear and injury to his good name and reputation.

## COUNT II
**Deliberate Indifference to Conditions of Confinement (42 U.S.C. § 1983)**

41. At all material times, Loudoun County and Captain David Wozniak acted under the color of state of law.

42. At the time of his confinement in LCADC, Jaafar had not been convicted of a crime and therefore was a pretrial detainee.

43. As a pretrial detainee, Jaafar may not be subject to punishment under the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment prohibits deliberate indifference to serious medical needs of detainees.

44. As the commander of the LCADC facility, Captain David Wozniak set policy for Loudoun County.

45. At Wozniak's instruction, LCADC confined Jaafar to a restraint chair for 8-hour periods between March 2, 2022 through April 25, 2022 during those days of his confinement at LCADC.

46. Jaafar had diagnoses of serious medical conditions including Schizophrenia, PTSD and generalized anxiety disorder as diagnosed by physicians. Jaafar's serious condition of mental illness was so obvious that multiple health care workers diagnosed LCADC's inability to provide for Jaafar's care.

47. Defendants had extensive knowledge of Jaafar's mental health condition and the torture Jaafar experienced from continous time in the restraint chair. Despite such knowledge Defendants ignored Jaafar's serious need for mental health treatment outside of the confines of the restraint chair.

48. By confining Jaafar to a restraint chair restraint chair for 8-hour periods between March 2, 2022 through April 25, 2022 without any effort to use other methods or provide Jaafar with other mental health treatment, Defendants exhibited deliberate indifferent to Jaafar's serious mental health condition.

49. Due to Defendants' deliberate indifference to Jaafar serious medical needs, Jaafar asserts damages of severe emotional and mental distress, pain and

suffering, nightmares, loss of enjoyment of life, humiliation, mortification, great personal trauma, stress, fear and injury to their good name and reputation.

## COUNT III
### Excessive Force Against a Pretrial Detainee (42 U.S.C. § 1983)

50. At all material times, Loudoun County and Captain David Wozniak acted under the color of state of law.

51. At the time of his confinement in LCADC, Jaafar had not been convicted of a crime and therefore was a pretrial detainee.

52. As a pretrial detainee, Jaafar may not subject to punishment under the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment prohibits the use of excessive force against pretrial detainee.

53. As the commander of the LCADC facility, Captain David Wozniak set policy for Loudoun County.

54. Under Wozniak's instruction, Defendants inflicted unnecessary and wanton pain and suffering upon Jaafar by confining him to a restraint chair almost continuously between April 28, 2022 through June 2, 2022 during his detainment at LCADC. Defendants discarded any notion of attempting lesser periods of confinement or other options with Jaafar, openly taunting and humiliating him to increase his pain and suffering during this time.

55. Under Wozniak's instruction, Defendants ignored Jaafar's open and obvious seizures, wantonly and excessively subjecting him to agonizing pain and suffering while in the restraint chair.

56. Under Wozniak's instruction, Defendants ignored Jaafar's bodily functions while torturing him in the restraint chair, leaving Jaafar to suffer for hours after urinating and defecating upon himself.

57. Defendants' continuous use of the restraint chair on Jaafar between April 28, 2022 through June 2, 2022 constitutes cruel and unusual punishment and excessive force.

58. Due to Defendants' excessive force, Jaafar asserts damages for severe emotional and mental distress, pain and suffering, nightmares, humiliation, loss of enjoyment of life, mortification, great personal trauma, stress, fear and injury to his good name and reputation.

## COUNT IV
**Deliberate Indifference to Conditions of Confinement (42 U.S.C. § 1983)**

59. At all material times, Loudoun County and Captain David Wozniak acted under the color of state of law.

60. At the time of his confinement in LCADC, Jaafar had not been convicted of a crime and therefore was a pretrial detainee.

61. As a pretrial detainee, Jaafar may not subject to punishment under the Fourteenth Amendment of the Constitution of the United States. The Fourteenth Amendment prohibits deliberate indifference to serious medical needs of detainees.

62. As the commander of the LCADC facility, Captain David Wozniak set policy for Loudoun County.

63. Jaafar had diagnoses of serious medical conditions including PTSD and generalized anxiety disorder as diagnosed by physicians. Jaafar's serious condition

was so obvious that multiple health care workers diagnosed LCADC's inability to provide for Jaafar's care.

64. Defendants had extensive knowledge of Jaafar's mental health condition and the torture Jaafar experienced from continous time in the restraint chair. Despite such knowledge Defendants ignored Jaafar's serious need for mental health treatment outside of the confines of the restraint chair.

65. Under Wozniak's instruction, Defendants manifested deliberate indifference to Jaafar's serious mental illness by confining him to a restraint chair almost continuously between April 28, 2022 through June 2, 2022 during his detainment at LCADC. Defendants discarded any notion of attempting lesser periods of confinement or other options with Jaafar, openly taunting and humiliating him to increase his pain and suffering during this time.

66. Under Wozniak's instruction, Defendants manifested deliberate indifference to Jaafar's serious medical condition of seizures, wantonly and excessively subjecting him to agonizing pain and suffering while in the restraint chair.

67. Under Wozniak's instruction, Defendants manifested deliberate indifference to Jaafar's serious medical condition of the need to urinate and defecate leaving Jaafar to suffer for hours in the restraint chair after urinating and defecating upon himself.

68. Due to Defendants' deliberate indifference to Jaafar's serious medical conditions, Jaafar asserts damages of severe emotional and mental distress, pain and suffering, nightmares, loss of enjoyment of life, humiliation, mortification, great personal trauma, stress, fear and injury to their good name and reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

A. Enter judgment in his favor and against the County of Loudoun and/or David Wozniak;

B. Declare the acts and practices complained of herein are in violation of Tarik Jaafar's rights as secured by the Fourteenth Amendment of the Constitution of the United States, as enforced by 42 U.S.C. § 1983;

C. Award Plaintiff money damages for all pecuniary losses, including but not limited to, legal expenses incurred and to be incurred;

D. Award Plaintiff money damages for Defendants' violations of Tarik Jaafar's federal constitutional and civil rights, causing emotional and mental distress, pain and suffering, nightmares, attorney's fees and costs, inconvenience, loss of enjoyment of life, humiliation, embarrassment, mortification, shame, vilification, great personal trauma, stress, fear, worry, and injury to reputation in an amount not less than Eight Million Six Hundred Seventy-Four Thousand Three Hundred and Thirty-Five Dollars ($8,674,335.00);

E. Award Plaintiffs any and all reasonable attorney's fees, expert fees and costs, pursuant to 42 U.S.C. § 1988(b);

F. Award Plaintiffs pre-judgment interest from the date of service of this Complaint until the date of judgment; and

G. Award Plaintiffs any and all other relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

**TARIK JAAFAR**

By: __/*s/ Matthew J. Weinberg*___
Of Counsel

Matthew J. Weinberg, Esquire (VSB# 88664)
INMAN & STRICKLER, P.L.C.
575 Lynnhaven Parkway, Suite 200
Virginia Beach, Virginia 23452
Telephone:  (757) 486-7055
Facsimile:  (757) 431-0410
E-mail: mweinberg@imanstrickler.com

*Counsel for Plaintiff*